## ALMAND v. THE STATE.

The offense of larceny after a trust is committed only when the bailee
has made a fraudulent conversion of the thing intrusted to him.
Consequently when, on a trial for this offense, the evidence shows
that the accused had been intrusted at different times with different
sums of money to be appropriated for the benefit of the bailor in pur-
chasing and shipping cottonseed, and that the bailor received from
the bailee cottonseed of greater value than the amount of money with
which he intrusted the bailee for the purpose indicated, a con-
viction can not stand, because of the want of evidence of a fraudulent
conversion of the property with which the bailee was intrusted;
and this is true notwithstanding it appears that the bailee devoted
some of the money thus in his possession to the reimbursement of
one whose money the bailee had used in making the purchases for
the benefit of the bailor.

Argued May 21,—Decided June 4, 1900.

Indictment for larceny after trust. Before Judge Lumpkin.
Fulton superior court. March 10, 1900.

*G. W. Gleaton, Arnold & Arnold,* and *J. F. Daniel,* for plain-
tiff in error.

*C. D. Hill, solicitor-general,* and *Rosser & Carter,* contra.

LITTLE, J. Almand was indicted for the offense of larceny
after a trust delegated. The specific charge was, that he had
been entrusted by the Gate City Oil Company with certain
checks on banks in the city of Atlanta, at different times and
for different amounts of money, for the purpose of using the
funds represented by said checks in purchasing and shipping
cottonseed to the bailor. He was convicted, and moved for new
trial on a number of grounds. Inasmuch as it is our opinion
that the verdict was without evidence to support it, we do not
find it necessary to consider and pass upon the other grounds of
the motion. While the indictment charges that a number of
checks described in that instrument were misappropriated, the
State relied for conviction mainly on the appropriation to his
own use by Almand of one certain check for the sum of two hun-
dred and fifty dollars, dated November 29, 1898, which it was
shown was delivered to the accused and disposed of by him in
the county of Fulton. It appears from the brief of evidence

that Almand had been engaged in business with the Gate City Oil Company, in one way or another, for a number of years; that prior to the year 1898 he was due to that company a considerable amount of money for articles and merchandise furnished to him under an original agreement that such articles and merchandise were to be paid for in cottonseed at a certain price; that at various times during the year 1898 Almand received from the company and had cashed a number of checks which represented quite a large amount of money, for the purpose of buying cottonseed and shipping it to the company in Atlanta; that these checks were charged to him on the books of the company as they were delivered, as were other and different items of merchandise sold to him by the company, the whole account thus stated constituting an aggregate indebtedness for money advanced to purchase cottonseed and for merchandise previously sold to him by the company on credit; and that from time to time during the year the accused made shipments of cottonseed to the company in varying quantities. It also appears that during this period the accused was acting as the agent of the Marietta Guano Company in collecting notes which had been previously given by farmers in the purchase of fertilizers; that frequently the accused accepted payment for such notes in cottonseed which was shipped to the oil company, his plan of operation being, as we gather from the evidence, to ship cottonseed which he obtained by direct purchase, as well as by the collections which he made on the guano company's notes, directly to the oil company, without special regard to the amount of money furnished him by the company, his shipments sometimes exceeding in value the amounts of money furnished, and being sometimes less in value than such amounts. It was clearly shown that when he received the particular check for $250 he at once went to the office of the guano company, some of whose notes he had collected in cottonseed shipped to the oil company, indorsed the check to such company, and received credit for the amount thereof on his personal indebtedness incurred by reason of the collection of its notes; and if his conviction be allowed to stand, it must rest on the fact of this misappropriation of the check entrusted to him. The indictment is founded on section 194 of the Penal

Code, which declares that "If any person who has been intrusted by another with any money, . . check, . . or any other article or thing of value, for the purpose of applying the same for the use or benefit of the owner or person delivering it, shall fraudulently convert the same to his own use, he shall be punished," etc.

There can be no question that, under the evidence, the check was delivered to the accused for the purpose of purchasing cottonseed for the oil company, and it can not be denied that this specific check was delivered by the accused to one of his creditors and went to pay a personal debt. It must be noted, however, that it takes more than this to constitute the offense with which the accused was charged. Undoubtedly the check was technically converted from the use to which it was intended by the owner to have been put; but it is only when a *fraudulent* conversion has been made that a criminal offense is committed. If nothing more appeared but that the check was intrusted for the designated purpose and the bailee converted it to his own use, the conversion would be deemed fraudulent. But if the oil company had received in cottonseed the full value of the money which it had given to the accused with which to purchase the seed, how can it be said that its money was fraudulently converted? In other words, if the oil company gave the accused a given sum of money for the purpose of purchasing cottonseed for its use, and the accused, with his own or the money of some one else, purchased and shipped to it cottonseed of the full value of the money furnished, what difference can it make to the company whether the identical money which it delivered or the money of the accused paid for the seed? In any event it had, under the evidence, what it was entitled to demand from the accused in return for its money; and if in making these purchases the accused used his own money, or the money of some one else, and furnished the oil company all the seed which it could require of him, the fact that he used the money, specifically given for the purchase, to reimburse himself or another for the sum which he had paid out for the benefit of the oil company can not make any difference to that company. While such a proceeding might be a technical conversion, it could in no sense be a fraudu-

lent conversion. In the case of *Snell* v. *State*, 50 *Ga.* 222, this court, in construing the statute now under consideration, declared that, "to make out a case of larceny from the mere use of the article, it must appear that the use was fraudulent; that it was used under such circumstances as to show an intent to deprive the factor of his property." In the case of *Georgia Railroad* v. *Cubbedge, Hazelhurst & Company*, 75 *Ga.* 324, this court said, "There is nothing in the proofs offered by the plaintiff which shows any positive fraud or intentional wrong on the part of defendants, and, without this, there is no embezzlement or larceny after a trust. The conversion must have been wrongful and fraudulent." In the case of *Etheridge* v. *State*, 78 *Ga.* 340, this court, in defining what was a fraudulent conversion in a case of larceny after trust, declared that it was " a deception deliberately practiced in order to gain an undue and unfair advantage. " In his evidence, the president of the oil company among other things testified: " I can not say that Mr. Almand appropriated one cent of that money to his own use. " Again: " The cottonseed amounted to $767.06. I don't know that the money for these checks did not go to pay for this cottonseed." And in testifying as to the amount of money represented by the checks set out in the bill of indictment, and the value of the cottonseed received from the accused, the president further testified: " We furnished him $1,275, to buy cottonseed with, and he shipped us $1,900 worth of cottonseed. " It may be true that on striking a balance the accused will be found indebted to the oil company; but, if this testimony for the prosecution be true, it can not be held that the accused fraudulently converted to his own use any of the money which the oil company had intrusted to him with which to purchase cottonseed, because it shows that it received more seed than the money which it gave to the accused would buy. The criminal law is not concerned with the collection of the debt which the oil company holds against the accused. It will not lend its aid under any circumstances to collect this or any other debt. It is only for a violation of the laws of the State that the accused can be made to suffer punishment. If the oil company sold merchandise to the accused on a credit, the law will aid it to col-

lect its debt, to the extent of giving it a judgment against the property of the defendant, but it will not extend to it the aid of its criminal laws to enforce a settlement. Inasmuch as the State entirely failed to show that the accused fraudulently converted the property of the oil company to his own use, the court below should have awarded a new trial. Refusal to do so was error, and the judgment is

*Reversed. All the Justices concurring, except Fish, J., absent.*