## HARRIE BLAKE v. STATE.

No. A-2267.  Opinion Filed September 23, 1916.)

(160 Pac. 30.)

1. **EMBEZZLEMENT—Elements—Conversion.** **(a)** A fraudulent conversion is an essential element of the crime of embezzlement and such conversion must be shown by proof that the embezzler appropriated the money to his own personal use or that he placed it to some other use than the purpose for which it was received by him, or that he failed to account for and pay over the same on proper and lawful demand.

   **(b)** Proof of a mere failure to pay over money, standing alone, will not support a judgment of conviction for embezzlement.

2. **TRIAL—Verdict Contrary to Evidence.** When the proof introduced at the trial fails to establish the commission of the offense charged, the verdict of guilty and judgment rendered thereon, as a matter of law, are contrary to the evidence.

*Appeal from the District Court of Wagoner County.*
*Hon. R. C. Allen, Judge.*

Harrie Blake was convicted of embezzlement, and appeals. Reversed.

*Sponsler & Graves, Owen & Stone, Sumner J. Lipscomb,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for defendant in error.

ARMSTRONG, J.  The plaintiff in error, Harrie Blake, was convicted in the district court of Wagoner county, on a charge of embezzlement, and his punishment fixed at imprisonment in the State Penitentiary for a term of two years and a fine of One Thousand Dollars.

The indictment is a lengthy document, and no good purpose can be served by setting the same out in full.  It contains, however, allegations to the effect that certain funds "were paid to and received by the said Harrie Blake for the purpose of satisfying a certain judgment in favor of the plaintiff in said action, L.

W. Clapp, by virtue of his office as clerk of the district court of Wagoner county, state of Oklahoma."

"And being then and there by virtue of his office the clerk of the district court, the proper person to receive said sum of money for the use and benefit of the judgment creditor, L. W. Clapp, and having so reseived said sum of Two Thousand One Hundred Forty-two and 63-100 Dollars, the property of and belonging to said L. W. Clapp, he, the said Harrie Blake, did in Wagoner county, state of Oklahoma, then and there unlawfully, wilfully, feloniously and fraudulently, and not in the due and lawful execution of the trust of him, the said Harrie Blake, as clerk of the district court of Wagoner county, state of Oklahoma, aforesaid, embezzle, convert and appropriate said sum of Two Thousand One Hundred Forty-two and 63-100 Dollars * * * to the use of him, the said Harrie Blake, contrary to the form of the statutes," etc.

It appears that L. W. Clapp brought a suit in the district court of Wagoner county against C. S. Roach, et al. and recovered a judgment of $2,142.63. The allegation against the plaintiff in error is to the effect that this money was paid to him, received by him, and embezzled by him.

The testimony introduced by the state was from five witnesses: C. M. Bryant, clerk of the district court at the time of the trial; L. E. Cahill, Deputy State Examiner and Inspector; T. C. Harrill, president of a bank in Wagoner; T. H. Hammett, deputy clerk of the district court under Harrie Blake, and County Attorney C. E. Castle.

In addition, certain admissions were made and certain facts agreed upon by counsel. Witness Bryant testified that after he became clerk of the district court of Wagoner county he received about $2,100.00 through County Attorney Castle, and paid the same to the attorneys of record for L. W. Clapp in satisfaction of the judgment. He knew nothing further about the facts in the case. He also said that the county never lost anything by reason of the transaction. In fact, that no one lost any money on account of the same. Witness L. E. Cahill did not testify to any incriminating fact. Witness T. C. Harrill testified to no

incriminating fact. He was asked about the bank account of Harrie Blake subsequent to December 30, 1911, and said that from and after this date the account of Harrie Blake did not include any item of $2,100.00 or more. Witness Hammett testified to no incriminating fact. Witness Castle testified to no incriminating fact.

Counsel for the state and for the accused agreed upon a statement of certain facts, to-wit., that Harrie Blake received $2,142.63 in the manner as alleged in the indictment; that he was clerk of the district court of Wagoner county at the time.

Section 5327 R. L. 1910, provides:

"Where there is no execution outstanding, the clerk of the court in which the judgment was rendered may receive the amount of the judgment and costs, and receipt therefor, with the same effect as if the same had been paid to the sheriff on an execution; and the clerk shall be liable to be amerced in the same manner and amount as a sheriff for refusing to pay the same to the party entitled thereto, when requested, and shall also be liable on his official bond."

This is the section of the statute which authorizes the clerk, under certain conditions, to receive money in satisfaction of judgments. There is no allegation in the information to the effect that plaintiff in error, as clerk, received this money and failed to pay the same over upon proper demand therefor.

The proof fails to show that any demand was ever made at any time upon the plaintiff in error for the payment of the money in question.

Section 2243 R. L. 1910, among other things, provides that:

"Any sheriff, coroner, clerk of a court, constable or other ministerial officer, and any deputy or subordinate of any ministerial officer who fraudulently appropriates to his own use or to the use of another person, or secretes with intent to appropriate to such use, any money, evidence of debt or other property entrusted to him in virtue of his office, is guilty of a felony."

This is the statute under which the conviction in this case was had. It is contended by counsel for plaintiff in error that the judgment in this case should be reversed upon the ground that the verdict is contrary to the evidence. The crime charged in this case was embezzlement. The only proof in the record bearing upon the question of guilt is that the plaintiff in error received the sum of money as charged, and that his successor in office paid the judgment with funds received from the county attorney. Whether or not the same identical funds finally paid this judgment is a question upon which there is no light thrown by proof. It is fundamental that the crime of embezzlement cannot exist without there be a fraudulent conversion. The burden is on the state to show this conversion beyond a reasonable doubt. A felonious conversion under the embezzlement statute should be proved either by proof of an appropriation of the money to the personal use of the accused; that is, that he disposed of the same for his own personal benefit and his own private business, or by putting it to some other use than a proper discharge of the trust imposed, or by proving that the accused, after obtaining lawful possession of the funds, failed to account for or to pay the same over on proper or lawful demand. There was no proof offered of either in this case. If a proper demand had been made upon the accused to pay over or account for the money in question and he had failed to do so, the law would presume a conversion. This the state not only failed to prove, but did not even attempt to prove. The county attorney in his opening statement to the jury, stated that he expected to prove these facts but wholly failed to do so. A fraudulent act of conversion is essential to the validity of a conviction under the statute. A mere failure to pay over the money will not justify the same. See *Fitzgerald v. The State,* 50 N. J. L. 475, 14 Atl. 746; *Henderson v. The State,* 105 Ala. 82, 29 So. 799.

This question is discussed at some length in the case of *People v. Wyman,* 102 Cal. 552, 36 Pac. 932. Among other things, the court in the discussion in that case said:

"The only other facts relied upon to sustain the verdict are: First, that defendant neglected up to the time of his arrest, a period of 13 days, to cash the orders sent him, and to pay for the land which his client desired to purchase from the government; and secondly, that, when arrested, he did not have on his person all the money which had been intrusted to him for the purpose of making such payment, and did not offer to account for the same. These facts are clearly insufficient to prove that defendant had fraudulently appropriated the money of the client to his own use prior to the filing of the complaint upon which he was arrested. The fact that he did not have upon his person all of the money sent to him by his client was not of itself sufficient to justify the jury in finding or believing that he had fraudulently appropriated such money to his own use before his arrest, because such fact is not necessarily inconsistent with the fact that he may still have retianed such money under his control, or subject to his order. The circumstance, to say the least, is inconclusive, affording only slight, if any, ground for suspicion, and is not strengthened by the other evidence in the case. Nor can the failure of the defendant to pay for the land prior to his arrest be regarded as a conversion by him of his client's money, much less as evidence of the fraudulent appropriation of such money to his own use."

In the case of *Fitzgerald v. The State,* cited supra, the court, among other things, said:

"When the owner of goods which have been intrusted to another seeks redress for their conversion in a civil action, he is compelled to establish the fact of conversion by proof of the exercise of some dominion over the goods inconsistent with the right of the true owner. Proof that the owner had demanded the goods, and that the person in possession had refused to return them, is accepted as evidence of conversion; but mere neglect to return, in the absence of a demand, has never been admitted as proof of conversion. Still less will the mere neglect to pay over proceeds lawfully received prove a fraudulent conversion thereof."

In *Allen v. The State,* 110 Ga. 883, 78 Am. St. Rep. 140, the Supreme Court of Georgia discussed the principle here involved, and, among other things, said:

"There can be no question that, under the evidence, the check was delivered to the accused for the purpose of purchasing

cotton seed for the oil company, and it cannot be denied that this specific check was delivered by the accused to one of his creditors and went to pay a personal debt. It must be noted, however, that it takes more than this to constitute the offense with which the accused was charged. Undoubedly, the check was technically converted from the use to which it was intended by the owner to have been put; but it is only when a fraudulent conversion has been made that a criminal offense is committed."

See also *State v. Hunnicutt,* 34 Ark. 562; *State v. O'Keen,* 35 La. Ann. 901; *State v. Flourney,* 46 La. Ann. 1519, 16 So. 454; *State v. Smith,* 16 So. 938; *State v. Pellerin,* 43 So. 161; *People v. Paige,* 116 Cal. 386, 48 Pac. 326.

In this latter case the court, among other things, said:

"On May 28th defendant did not appear, and an order was then made removing him as guardian of the said estate. 'No other order was made, and no person was appointed guardian in his place and stead, and no demand was made upon him for the moneys and goods in his possession and belonging to the said estate of Louis Litchneger.' The minute order of removal containing the recital, 'and it appearing to the satisfaction of the court that said Page has appropriated to his own use the funds of the said insane person, and that he has rendered no account thereof,' was next introduced in evidence, against the objection of defendant that it was immaterial, irrelevant, incompetent and hearsay. In January, 1896, defendant was arrested in the city of New York, and he stated at the time to the officer arresting him, 'that he was anxious to return to stand his trial for the offense of which he was accused.' The above is, in substance, all the evidence introduced by the prosecution, and at the conclusion of it the defendant, by his counsel, moved the court to instruct the jury to acquit 'upon the ground that the facts proven by the prosecution were not sufficient to establish the guilt of the defendant of embezzlement; that there was nothing in the proof to show that Mr. Page had fraudulently misappropriated any of his ward's money or property; that no demand had ever been made upon him for the money or property of his ward; and that no person had ever been designated by any court, or by any person in authority, to whom the defendant, Mr. Page, could have delivered the money or property of his ward.' The court overruled the motion, and thereupon the case was submitted without further testimony. It is very evident that the recital above quoted from the order

removing defendant from the position of guardian did, not constitute any evidence tending to support the charge of embezzlement. At most, it was mere heresay, and Judge Slack, who made the order and was on the stand as a witness, was not asked, and did not attempt to state, upon what ground the recital was based. It must, therefore, be entirely disregarded. Leaving out this recital, it will be observed that there was no evidence showing that defendant ever spent, wasted, or appropriated to his own use any of the money of his ward. It is true, he drew from the savings and loan society most of the money which was on deposit there to the credit of Lichtneger; but this was not a criminal act and did not show a criminal intent to misappropriate the money. He may have intended to deposit the money in some other bank, or to invest it in safe securities. The cashier of the savings and loan society, who testified to the withdrawal, stated: 'I do not know what Mr. Page did with the money which he withdrew. He may have deposited it in some other bank or some safe deposit box.' So far as appears, the defendant at the time of the trial may have still had all the money ready to be paid over on demand to any one authorized to receive it. The fact that he did not pay to the insane asylum the $475.00 ordered to be paid by Judge Levy does not tend to show a misappropriation of that money. He may have believed that Lichtneger was in the 'pauper ward,' and that the asylum was not entitled to demand pay for keeping and caring for him.

"It is urged for respondent that, while 'the fact that a defendant does not take the witness stand on his own behalf cannot be taken against him by the jury, yet it is, in our judgment, a fact that should be taken into consideration by this court on the point of the sufficiency of the evidence to justify the verdict.' We do not think so. A person accused of crime is presumed to be innocent until he is proved to be guilty, and facts and circumstances which cannot be considered by the trial court or the jury in determining as to the guilt or innocence of the accused cannot be resorted to in this court to support a verdict not otherwise authorized."

In the case of *People v. Royce,* 106 Cal. 173, 39 Pac. 524, the Supreme Court of California, in another case involving the principle herein discussed, said:

"The fact that the treasurer of an association deposits a check drawn in its favor in a bank, and has the amount credited

to his personal account, does not justify a conviction, in the absence of evidence of a demand by the association, or of inability to respond to a demand."

"In the opinion delivered in department (37 Pac. 630), it is said that 'the errors complained of are based upon rulings upon questions of evidence, and upon instructions to the jury,' and as to such errors and questions we are satisfied with that opinion. But a hearing in banc was ordered on account of a grave doubt whether, under any proper view of the law, there was evidence sufficient to warrant a conviction of the crime charged; and, from further consideration of the case, we are satisfied that there was not such evidence.

"The facts shown by the evidence are these: On February 21, 1893, the appellant was treasurer of the Veterans' Home Association, a corporation, and on that day received a certain draft for the benefit of said association for $10,350.00. On the same day he deposited said draft with the Crocker-Woolworth National Bank of San Francisco, and the amount of the draft was credited to appellant's personal account. The president of the bank testified that he 'did not hear him (appellant) give any direction as to whose credit it should be placed,' and that 'we did not place it to the credit of the association because we have not had any such account on our books.' Appellant informed the bookkeeper of the association that he had received this draft, and the amount of it was entered by the bookkeeper on his ledger of the date of February 21st. On February 24th the association received from appellant $8,310.35 of this money; and the charge against appellant is the embezzlement of the balance of said draft, amounting to about $2,050.00. What became of this balance does not appear. Appellant may have had it ready to be produced whenever called for. The by-laws of the association required the treasurer to deposit all funds over a certain amount 'in such bank as the board (of directors) may direct;' but it does not appear that the board ever made such direction, or named any bank in which the deposits should be made. The by-laws also provide that all moneys in the hands of the treasurer should be turned over to his successor in office; but it does not appear that appellant ever had a successor in office. It is also provided in the by-laws that the treasurer shall make reports of moneys received and expended 'to the association at its annual meeting,' and, also, 'at each quarterly meeting of the board of directors;' but there is no evidence of any such yearly or quarterly meeting

between February, 1893, and the date of the indictment, which was June 2, 1893, or that appellant failed to report said money, or made any report in which it was not mentioned. There is no evidence that any demand was ever made upon appellant for said money by the association, or by any officer or agent thereof, or by any other person. The conviction rests, therefore, solely upon the fact that the money was deposited with the bank on February 21st to the personal account of appellant, under the circumstances as above stated. This was evidently the theory upon which the indictment was based, for it is alleged that the embezzlement was committed on the 24th day of February—just three days after said deposit. It is true, as the court instructed the jury, that the crime charged might have been committed at any time before the date of the indictment; but the deposit of the money in the bank on February 21st was the only fact proven upon which the conviction could have been based. And that fact is not sufficient to support the verdict. It does not appear that he was ever called upon to apply the money to any need of the association, or to make any particular use of it, or to put it to any special place. It is true that he drew one or two checks on the Crocker-Woolworth Bank; but it does not appear that he had not private funds there, and the testimony of the president of the bank leaves the impression that he had been keeping an account with that bank. He may have had the money all the time ready to respond to any demand of the association. In fact, there is no evidence that he did not pay it over to the association. It is clear that he did not clandestinely keep it; for he reported it to the bookkeeper. No doubt, embezzlement may be established, under certain circumstances, without proof of a demand; as where other evidence clearly shows an appropriation by an employee of his employer's funds with intent to do so fraudulently and feloniously. But there is no such evidence in the case at bar. It is sometimes held in civil cases that the deposit by a trustee of trust funds to his personal account is sufficient cause for charging him with interest; but such fact alone is not sufficient evidence to convict a man of a felony.

"For the reasons above given, we are of opinion that a new trial should have been given. The judgment and order are reversed, and the cause remanded for a new trial."

In the case of *State v. Weber,* 31 Nev. 385, 103 Pac. 411, the Supreme Court of Nevada discussing the question here being considered, among other things, said:

"The mere depositing of the check to defendant's personal account, especially in the fact of showing that the corporation had not· then, and never did have, a regular depository for its money, and that the treasurer of the company was not present at the time, certainly, we think, could not be held to constitute a conversion by the defendant of the money due upon the check. Before the defendant could be legally convicted of embezzlement, it must be proven beyond a reasonable doubt, that the money credited to his personal account upon the check of Captain Hooper belonged to the Doctor Mining Company, and that the defendant either applied the money so credited to him to his· own use, or to some use or purpose other than that for which the same was intrusted to him, or that he refused to deliver it to the rightful owner, upon demand. There is no showing in the evidence that the defendant applied the money, or any part of it, to his own use or to any other use whatever, or ever refused to account for the same upon demand of the Doctor Mining Company, its treasurer, or any one else, or that any demand whatever was ever made upon him. * * *

"The record contains a number of other assignments of error, but the view we have taken upon the insufficiency of the evidence makes its unnecessary to consider them."

The proof disclosed by this record, subjected to the test provided by law, wholly fails to warrant the conviction, and, as a matter of law, the verdict was contrary to the evidence. We know nothing of what the real facts in connection with this transaction may be, but in order to warrant a conviction, a case must be established under the proof beyond a reasonable doubt.

For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.

DOYLE, P. J. and BRETT, J., concur.