## WORTMAN v. THE STATE OF OHIO.

*Criminal law—Embezzlement—Variance between indictment and proof—Employment or election of secretary of fraternal order—Necessity of demand to establish crime and proof of intent—Failure to pay weekly receipts to treasurer— Refusal to pay aggregate amount when demanded.*

1. There is no variance between an averment in an indictment for embezzlement, charging that the converted funds came to the hands of the defendant by virtue of his employment as secretary of a fraternal order, and proof that the defendant was elected such secretary.
2. While no demand by the owner is necessary to complete the crime of embezzlement, an unsatisfied demand is a proper method of proving the intent to fraudulently appropriate.
3. A mere failure to pay over money collected is not sufficient proof of embezzlement. Where the secretary of a fraternal order has received and failed to pay over various amounts, from week to week, and there is no evidence of his intent, and the order upon discovery of the defalcation demands the payment of the aggregate of such amounts, and such demand is refused, an indictment charging embezzlement of the aggregate sum as of the date when demand was made is good, and a conviction thereunder will be sustained.

(Decided December 13, 1923.)

ERROR: Court of Appeals for Jackson county.

*Mr. Frank DeLay,* for plaintiff in error.
*Mr. John E. Foster,* prosecuting attorney, and *Messrs. Willis & Jones,* for defendant in error.

MAUCK, J.  Wortman was tried and convicted under an indictment for embezzlement, and to that judgment of conviction prosecutes error to this court, assigning numerous grounds for the reversal of the judgment.

The indictment alleged that the accused, "between the first day of December, in the year of our Lord one thousand nine hundred and nineteen * * * and the first day of July, 1922 * * * being then and there an officer, to-wit, secretary" of a certain fraternal organization, "did * * * between the dates aforesaid embezzle and convert to his own use * * . * certain money of the amount and value of $4,839.59 of the personal property" of that organization, "which said money, to-wit, the sum of $4,839.59 had then and there come into the possession and care of him the said Harry Lee Wortman, by virtue of his employment as such officer," etc.

The evidence of guilt, most convincing in its character and volume, is not disputed by the testimony of the accused or by anyone called by him. Reversal is asked on technical grounds alone, and we proceed to an examination of these several grounds with the conviction that the verdict was right, that the accused was in fact guilty of the odious and cowardly crime of stealing the money of his brethren, that he deserved the judgment rendered against him, and that such judgment ought to stand unless the technicalities in

voked in his behalf imperatively require that a new trial be granted him.

. The evidence tended to show that Wortman during the times laid in the indictment was secretary of the Wellston Aerie. of Eagles; that he originally became such secretary by appointment, and thereafter continued by virtue of successive elections; that as such officer he was authorized to receive money, which money he was expected to turn over to the treasurer on the same or succeeding day, and in his own books was required to segregate or distribute the receipts to the several funds for which they had been collected; that accused made collections from week to week, but turned over to the treasurer different amounts, occasionally more, but generally less than the sum collected, his net stealings aggregating during the period covered by the indictment $4,872.14; and that the state auditor of the order discovered the shortage and the amount of it during the summer of 1922 and demanded restitution. No prior demand had been made by anyone.

The principal ground for reversal urged is that the indictment covered numerous different embezzlements, that by no appropriate averments of continuando were they linked into one act, and that as the evidence showed different criminal acts and pleaded but one the state should have been compelled to elect upon which embezzlement it would rely for conviction. In this behalf it is urged that when the defendant failed to turn over to the treasurer by the succeeding day the moneys collected at the regular meeting the crime was accomplished, no demand being necessary to fix the criminal responsibility of the embezzler. It is

true that, save in states where the statute so provides, no demand by the owner or anyone else is necessary to complete the crime of embezzlement. The offense generally is complete when the intent to fraudulently appropriate concurs with the possession of the property involved. The criminal intent must be proved, however, and an unsatisfied demand of payment is proof of such intent. Frequently the necessary intent may be proven otherwise than by failure to pay on demand. It is sometimes shown by the actual diversion of the exact property in question to the personal use of the embezzler (*State* v. *Baxter*, 89 Ohio St., 269); sometimes by a denial of possession, thereby indicating a purpose to fraudulently keep (*Edelhoff* v. *State*, 5 Wyo., 19, 36 Pac., 626). While there are thus many ways of proving the existence of a criminal intent the very general rule requires that it be present else the offense is not complete. This general rule is thus stated:

"The mere neglect to pay over money is not sufficient proof of a fraudulent conversion to one's own use, for there may be losses and failures to pay or even to account where the failure is due to misfortune or other cause not criminal. But an officer of a corporation who appropriates trust funds to private purposes and refuses to account for them, has been held to be guilty of embezzlement although he is not bound by law to pay over the identical money received." 9 Ruling Case Law, 1276, Section 17.

The proposition has been many times decided, but nowhere more clearly than in *Blake* v. *State*, 12 Okl. Cr., 549, 160 Pac., 30, L. R. A., 1917B,

1261, wherein the Supreme Court of Oklahoma thus puts it:

"A fraudulent conversion is an essential element of the crime of embezzlement and such conversion must be shown by proof that the embezzler appropriated the money to his own personal use or that he placed it to some other use than the purpose for which it was received by him, or that he failed to account for and pay over the same on proper and lawful demand.

"Proof of a mere failure to pay over money, standing alone, will not support a judgment of conviction for embezzlement."

The editor of L. R. A. follows the opinion with a collection of many cases of like import. See also note to *Eggleston* v. *State*, 87 Am. St. Rep., 17.

The decisions of the Supreme Court of Ohio are perhaps less explicit, but they are none the less in complete accord with the rule elsewhere obtaining. (*Gravatt* v. *State*, 25 Ohio St., 162, *Campbell* v. *State*, 35 Ohio St., 70, and *State* v. *Bailey*, 50 Ohio St., 636.)

The accused now pleads that he should not stand convicted of one embezzlement because he was guilty of many; that having stolen many times he should not be punished, like one who had stolen once. It may be that this self-drawn accusation is none too severe. It may be that each week, as Wortman received the payments made by his brethern, he said to himself that he would then and there steal the money confided to his care, and that as he thought so did he. This is a possibility of the situation, but it was not proven. The state showed that he did not pay over the

receipts to the treasurer as he ought to have done, but it did not show any application of the funds to the defendant's personal uses, or any act that tended to show the receipts to have been converted, until the demand by Hyneman for restitution. So far as the record shows the money may have all been in the possession of the defendant when this demand was made. His failure to respond to this demand completed what had, theretofore, not been proved to be a crime. There was one embezzlement, and it occurred about July, 1922.

Another assignment of error insisted upon is that the court erroneously overruled an objection to the testimony of the accountant who gave a summary of his examination of the books of the Aerie kept by the accused. It is not denied that the general rule is that within the sound discretion of the court such testimony is admissible (2 Jones Commentaries on Evidence, Section 206), but it is said that the books so summarized must be either offered in evidence or be in the custody of the court, so that they may be examined by the adverse party (*Ford* v. *State*, 11 C. C. (N.S.), 324), and that one of the books so used in the case at bar, the individual ledger, was not in evidence. It does not appear, however, that the accused made any effort to secure the missing book, that he had any desire to examine it, or that it was not actually in the custody of the court. It, on the contrary, appears that the entries in the book not in evidence were identical with another record which was in evidence, the witness testifying:

"I found that all of the credits given for dues and other things paid by members as they appear

in the individual ledger account correspond exactly with the amount shown to have been paid by the stubs of the official receipts issued by the secretary."

The defendant objected to the reception in evidence of the stubs of the official receipts. He will not now be heard to complain that another record of identical figures was not formally introduced.

The variance urged between the allegation of the indictment, that the embezzled funds had come to the hands of the accused by virtue of his "employment" as secretary, when the evidence showed his "election" to that position, is covered by Section 13582, General Code.

The other assignments of error we consider wholly unsubstantial.

The record warrants the judgment and the judgment is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and SAYRE, J., concur.