## SAM LYON v. STATE.

No. A-9557. Feb. 1, 1940.
(100 P. 2d 287.)

McDonald & McDonald, of Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty. of Oklahoma City, for the State.

BAREFOOT, J. The defendant was charged with the crime of embezzlement, in Oklahoma county; was tried, convicted and sentenced to pay a fine of $5 and serve a term of five years in the penitentiary, and has appealed.

The defendant, Sam Lyon, was employed by the State Highway Commission of the state of Oklahoma as cashier of the title division. He was charged by information with embezzling the sum of $1,974 during a period from September 10, 1935, to May 12, 1936. The method adopted by the Highway Commission and in force, as shown by the record, was that the cashier of the title division re-

ceived all moneys sent in or paid in by the tag agents located in the various counties, and from the issuance of licenses to used car dealers. Upon receipt of this money receipts would be issued by the cashier, or his assistant in his absence. These receipts were made in triplicate; the original going to the tag agent; the duplicate being pinned to the agent's report and made a part of that agent's permanent record in the Highway Department, and the triplicate remaining in the defendant's department. These checks, money orders, and cash, upon being received by the defendant or his assistant, were placed in a box, which was placed in a drawer of the table at which the defendant and his assistant worked. On the next day these checks, money orders and cash were taken, either by defendant himself, or his assistant, to the cashier of the accounting department of the Highway Commission. Before taking them these items were totaled by defendant, if he was there, if not, by his assistant, and the receipt book was checked against the cash, checks and money orders on hand to show that they balanced. A separate list of every check, either personal or cashier, or money order, was made up, together with the amount for which it was written, and the place from which it had been sent, all cash being lumped together in one sum on the itemization sheet, with no designation of the agent or the agent's location This sheet was written on the typewriter. The assistant of defendant testified that these lists were made individually by defendant, after checking the box, and copied by her from his data, and by her written on the typewriter. Only a very few times did she prepare these statements herself. There was also prepared a "Daily Summary of Cashier's Collections and Deposits with the State Treasurer." This sheet showed the receipts from tag agents, also the total collections from used car licenses, and gave the grand total. The itemization of the checks and the daily summary sheet,

together with the checks and cash received, were taken to the office of the cashier of the chief of accounts of the Highway Department, which was located on the same floor of the Capitol Building.

The cashier of that department would run an adding machine slip on the itemization sheet and compare the same with the adding machine slip prepared and presented. If the comparison balanced, the cashier in the department of accounts would issue a receipt to defendant which bulked the checks, money orders, currency and silver and showed a grand total. This receipt was made in duplicate, the original being returned to the defendant's possession, and the duplicate remaining with the cashier of the chief of accounts.

The record reveals that the above system has been eliminated and is not now in force in the department, and was not in force at the time of the trial of this case.

The information upon which defendant was charged was based upon Oklahoma Statutes, 1931, section 2495, Okla. Stats. Anno. title 21, section 341, which is as follows:

"Every public officer of the state or any county, city, town, or member or officer of the Legislature, and every deputy or clerk of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this state or any department of the government of this state or any bureau or fund created by law and in which this state or the people thereof, are directly or indirectly interested, who either:

"First: Appropriates to his own use, or to the use of any person not entitled thereto, without authority of law, any money or anything of value received by him as such officer, clerk, or deputy, or otherwise, on behalf of this state, or the people thereof, or in which they are interested; or,

"Second: Receives, directly or indirectly, any interest, profit or perquisites, arising from the use or loan of public funds in his hands or money to be raised through his agency for state, city, town, district, or county purposes; or,

"Third: Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to any moneys so received by him, on behalf of the state, city, town, district or county, or the people thereof, or in which they are interested; or,

"Fourth: Fraudulently alters, falsifies, cancels, destroys or obliterates any such account; or

"Fifth: Willfully omits or refuses to pay over to the state, city, town, district or county, or their officers or agents authorized by law to receive the same, any money or interest, profit or perquisites arising therefrom, received by him under any duty imposed by law so to pay over the same, shall upon conviction thereof, be deemed guilty of a felony and shall be punished by a fine of not to exceed $500 and by imprisonment in the penitentiary for a term of not less than one nor more than 20 years and in addition thereto shall be disqualified to hold office in this state, and the court shall issue an order of such forfeiture, and should appeal be taken from the judgment of the court, the defendant may, in the discretion of the court, stand suspended from such office until such cause is finally determined."

The defendant was charged, under the above section, with the embezzlement of $1,974, covering a period of September 10, 1935, to May 12, 1936. The state, to substantiate the allegations of the information, first introduced an audit made by an auditor working out of the office of the State Examiner and Inspector, which audit covered a period from July 1, 1935, to May 23, 1936. This audit was made up from the receipts as above indicated, and which were taken from the office of the defendant and the office of the cashier of the accounting department, and revealed the shortage during that period of $1,974. This

report was from July 1, 1935, but did not reveal a shortage prior to September 10, 1935, the date alleged in the information. There were introduced in evidence by the state 20 exhibits which were receipts showing the receipt of certain sums of money from different tag agents in different counties of the state. The total of the 20 receipts amounted to the sum of $1,974, and the receipts were signed by the defendant, Sam Lyon, and were procured by the auditor from the office of the State Examiner and Inspector from the office of defendant. These receipts gave the name of the agent, the date received, the amount received, and generally the address of the one who sent in or delivered the money or check. In some instances money was paid in person by the tag agents or the used car dealers. There were next introduced in evidence by the state 20 receipts from the cashier of the chief of accounts department. These were receipts corresponding to the receipts issued by the department of the defendant. The total receipts, according to the auditor's reports from the office of the defendant during the period above stated was $282,684.89, and the total receipts delivered by him to the cashier of the accounting department was $280,710.89.

The state further showed, and the exhibits revealed, that the amount of shortage each day was the exact amount paid by one of the agents to defendant on that day. All of the checks and money orders were traced by the auditor, and accounted for, and were deposited with the treasurer of the accounting department. The shortage was in cash items. All of the 20 receipts issued from the defendant's office were signed by the defendant in person. The evidence revealed that defendant was present on the dates these receipts were issued. The evidence showed that he made up the statements and gave them to his assistant, who copied them on the typewriter, and these facts fully justi-

fied the jury in finding that the defendant had not only failed to account for and turn over the money which was the property of the state, and which had been entrusted to his care and keeping, but that he had misappropriated the same by appropriating it to his own use and benefit.

Section 2037, Okla. Stats. 1931, Okla. Stats. Anno. title 21, section 1451, defines embezzlement as follows:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted." This is the general statute defining embezzlement. In the case of State v. Duerksen, 8 Okla. Cr. 601, 129 P. 881, 882, 52 L. R. A., N. S., 1013, this court says:

"When one converts the money of another to his own use, without permission from the lawful owner thereof, the law infers a fraudulent intent, and punishes the act of embezzlement. The fact that a person never concealed the taking or converting of the money received, as the money in this case was, and promises to return it, does not make the act lawful or any the less embezzlement under the statute. The trial court clearly misunderstood the law as applied to the facts in this record, and erroneously advised the jury to return a verdict of not guilty. A conviction and punishment should have followed rather than an acquittal from the facts before us. If every person in this state, who occupies a confidential relationship as agent (or otherwise) to other persons, should be permitted to use and convert the money of his principal, that might come into his hands, to his own use, and then escape punishment simply because he admitted using the money and promised to pay it back, the embezzlement statute had just as well be erased from the books, and the courts rallied to the support and condonement of such conduct. There will be some misappropriation of trust funds with a rigid enforcement of the law; and when such is the case, the sooner and swifter the punishment, the better for the public welfare. This court declines to approve a rule which places a premium on crookedness. The indiscreet handling of money by those who, by reason of a confidential relationship, come into

possession of funds of another and appropriate the same to their own use is not to be tolerated, and the guilty permitted to escape punishment. A man who appropriates to his own use the funds of another, received in a trust capacity, is no less a thief under the law than one who in the nighttime purloins his money or other personal property and sells the same for his own benefit. Such conduct is to be condemned rather than condoned."

Under the specific statute heretofore quoted, under which defendant was prosecuted, the law infers that the property had been appropriated to the use and benefit of the defendant, under the facts in this case. Casselman v. State, 58 Okla. Cr. 371, 54 P. 2d 678; State v. Allen, 21 S.D. 121, 110 N.W. 92; Blake v. State, 12 Okla. Cr. 549, 160 P. 30, L.R.A. 1917B, 1261; State v. Bunch, 23 Okla. Cr. 388, 214 P. 1093; Smith v. State, 42 Okla. Cr. 136, 275 P. 359; State v. West, 14 Okla. Cr. 405, 171 P. 1127; Harris v. State, 17 Okla. Cr. 69, 175 P. 627; Hays v. State, 22 Okla. Cr. 99, 210 P. 728.

The only defense offered by defendant was that other persons had access to the money and checks, and that for this reason it could not be found that he was the identical person who made the misappropriation. All of the facts and circumstances reveal that he was the one who had possession and control of the funds. He signed the receipts, was present on the dates the receipts were issued, and he made up the memorandum statements which were typewritten by his assistant. The audit was made from the records in his office, and fully showed under his signature the receipt of the money from the tag agents and a failure to deposit it with the cashier of the accounting department as was his duty. Not a single one of the 20 receipts bore the initial of his assistant, but were in his own signature. The jury had the right to consider

all the facts and circumstances, and after such consideration they found the defendant guilty. It is not for this court to say they came to the wrong conclusion.

It is urged for reversal of this case, that the court erred in giving instructions Nos. 5, 6, 7, and 8, and in refusing to give certain instructions requested by defendant. The quoting of these instructions would unduly lengthen this opinion. Instruction No. 5 defined embezzlement in the terms of the statute, Oklahoma Statutes, 1931, sec. 2037, Okla. Stats. Annot., title 21, sec. 1451, and stated the terms of the statute under which defendant was charged by the information as heretofore quoted. Instruction No. 6 told the jury that if they believed from the evidence in this case beyond a reasonable doubt that defendant had embezzled the funds, and set forth the terms of the statute above quoted, he would be guilty. Certainly there could be no error in the giving of these two instructions. Instruction No. 7 was upon circumstantial evidence. The general terms of this instruction have often been approved by this court. Carter v. State, 6 Okla. Cr. 232, 118 P. 264; Howard v. State, 2 Okla. Cr. 200, 101 P. 131; Baldwin v. State, 11 Okla. Cr. 228, 144 P. 634; Jackson v. State, 22 Okla. Cr. 338, 211 P. 1066; Fluke v. State, 27 Okla. Cr. 234, 226 P. 188; Inklebarger v. State, 8 Okla. Cr. 316, 127 P. 707.

Instruction No. 8 was with reference to the effect of evidence of good character and reputation. The court did not give the identical instruction requested by defendant, but gave one which has been approved by this court many times. Morris v. Territory, 1 Okla. Cr. 617, 99 P. 760, 101 P. 111; Wilson v. State, 3 Okla. Cr. 714, 109 P. 289; Williams v. State, 19 Okla. Cr. 307, 199 P. 400; Jolliffee v. State, 21 Okla. Cr. 278, 207 P. 454.

The requested instructions offered by defendant in this case were covered in almost every instance by the general instructions given by the court.

The only defense made by defendant in this case was that he had not misappropriated any of the funds which came into his hands, and that other parties working in his office, or in close proximity thereto, had an opportunity or chance to misappropriate the funds instead of himself. Certain of the requested instructions were proper statements of the law. Others requested were not the law. Others were covered by the general instructions.

From a careful examination, we do not find that the court erred in refusing to give the requested instructions offered by the defendant in this case.

From a reading of this record, one can but come to the conclusion that a young man who was given a responsible position in this state, and was trusted with the receiving of money of the state has failed to live up to his official oath to account to the state for the money which he has received. A jury has found, under the facts and circumstances offered in evidence, that these funds in the sum of $1,974 had been misappropriated by this defendant, and finding no error in the conclusion thus reached, it is the opinion of this court that the judgment of the district court of Okahoma county should be affirmed.

DOYLE, P. J., and JONES, J., concur.