## E. E. ABERNATHY v. STATE.

No. A-9513. March 21, 1940.
(101 P. 2d 634.)

Dudley, Hyde, Duvall & Dudley and Jack Fariss, all of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., and John F. Eberle, Asst. Co. Atty., both of Oklahoma City, for the State.

BAREFOOT, J. Defendant, E. E. Abernathy, was charged by information filed in the district court of Oklahoma county, with the crime of embezzlement; was tried, convicted, and sentenced to pay a fine of $1, and serve a term of three years in the penitentiary, and has appealed.

For reversal of this case it is contended:

"First: The evidence as a whole fails to show the defendant guilty beyond a reasonable doubt, and the verdict of the jury, and the judgment and sentence entered thereon, is not supported by the evidence but is contrary thereto."

"Second: The trial court erred in giving instruction No. 6, and in refusing to give the defendant's requested instruction No. 1."

On the 7th day of January, 1929, Stanley Rogers became sheriff of Oklahoma county. On January 20, 1930, the defendant, E. E. Abernathy, was commissioned as deputy, and continued to act as such until February 1, 1935, a little more than five years. Defendant had formerly had three years and ten months' experience in the tax department of the county treasurer's office of Oklahoma county. At the time he was appointed deputy sheriff he was placed in charge of the collection of delinquent personal taxes and sales taxes. While he performed other duties as a deputy this was his principal business and took the greater part of his time.

During the year of 1935 it was claimed that there was a shortage in the accounts handled by the defendant, and during the year 1935 and a part of 1936, an audit of the sheriff's office of Oklahoma county, including the delinquent personal tax department, which was in charge of defendant, was audited by an auditor from the office of the State Examiner and Inspector, and on August 26, 1936, a duplicate of said audit was filed in the office of the county clerk of Oklahoma county.

This audit covered four separate periods. The first period from January 7, 1929, to January 3, 1931; the second period from January 3, 1931, to January 2, 1933; the third from January 2, 1933, to January 6, 1935; and the fourth from January 6, 1935, to January 12, 1936.

This audit, which was introduced in evidence, revealed a shortage in the delinquent personal tax department during the time that defendant had charge thereof of $1,983.-76. On December 10, 1936, an information was filed against defendant charging him with the embezzlement of this amount.

The record in this case contains over 700 pages. Elaborate briefs have been filed by both the state and counsel for defendant. We have carefully read the record and the briefs and the cases therein cited. It would unduly lengthen this opinion to give a detailed statement of all the evidence.

It is the contention of the state that the evidence justified the jury in finding that defendant embezzled the amount above set forth, and appropriated it to his own use. The defendant contends that even though there was a shortage, as revealed by the report of the auditor, he did not take or embezzle the same, and did not, at any time, appropriate any of said funds to his own personal use and

benefit; that others besides himself had access to the funds and that he did not appropriate any of said funds to his own use and benefit.

The undisputed evidence leaves no doubt that defendant had complete charge of the collection of delinquent personal tax warrants sent to the sheriff's office by the county treasurer, and also the collection of delinquent sales taxes sent to the office by the Oklahoma Tax Commission. The evidence also reveals that other deputies at times assisted him and especially when he was not in the office at the time parties came to pay their delinquent taxes, but he was the one who had charge of the books and the money collected, and made the reports and deposits, as his duty required.

The method adopted for the collection of these delinquent tax warrants was simple, and if carried out in a lawful manner there was no chance or reason for a mistake or mishandling of the funds to be made. If any error was committed the defendant, under the system adopted, should have known it at once, and could have corrected it forthwith and made the error known to his superior officer, the sheriff of Oklahoma county.

The method adopted for the collection of these taxes was as follows: When a taxpayer failed to pay his personal taxes a tax warrant was issued by the county treasurer. These warrants were then sent to the sheriff, in book form, and it was the duty of the defendant, who was in charge of this department, to correctly enter these warrants on a warrant register. He then sent notice through the mail to the taxpayer notifying him that his taxes were delinquent. If the taxpayer came into the office and paid his taxes, he was given a receipt. If he mailed in his payment the receipt was mailed to him. When the per-

sonal tax receipt was returned a duplicate was made, which was retained in the sheriff's office. At the end of each day the total of the money and checks on hand should equal the total of the personal tax receipts written. At the end of the day it was the duty of the party in charge, the defendant in this case, to take the total of the money and checks on hand and list them on a deposit ticket. When the deposit ticket was totaled it should be equal to the total of all the receipts written for that day and would check with the total amount of money being deposited.

As a further check the number of the tax warrant paid was put on the receipt and when the deposit was made up the tax warrant number was also shown on the deposit slip. After this deposit slip was made up, it was then the duty of the defendant to take it, together with a pass book, and the checks and money, to the office of the county treasurer, where it was then deposited to the credit of the sheriff's depository fund, the county treasurer being the sheriff's banker. At the end of each month the sheriff's office wrote a voucher (check) on the depository fund paying to the county treasurer the total amount received for that month for delinquent personal taxes. At the time of the issuance of the voucher the original personal tax warrants were pulled from the books and placed with the voucher. The voucher was then taken to the county treasurer, the taxes of the taxpayer were paid, and the county treasurer issued his official receipt for each of the tax warrants paid.

The defendant testified that this was the system to be followed. That he had had three years and ten months of experience in the handling of taxes in the county treasurer's office. If the system as above outlined had been followed by the defendant, there would have been no chance of a shortage in his account. If any of the other persons

had collected money and failed to put it in the box or desk where he put the funds, he would have known it at the end of the day. Not only the witnesses for the state testified that he at no time made complaint to them of any shortage in his account, but the defendant also testified that he never at any time made complaint to any of his companions or to his superior officer, the sheriff of Oklahoma county. Defendant and others testified that at times personal checks were cashed from the funds which he had. If the checks were there, this would not have caused a shortage even though this was a bad practice. The defendant was the one in charge of the funds. It was his duty, under his oath as an officer of the state, to protect the funds entrusted to his care and keeping. If others were permitted to have access to the money which was entrusted to him, it was his duty to be just that much more careful, to the end that the proper amount was on hand when he made his daily report and checked his accounts for the day.

The reading of this record reveals that it abounds with instances where defendant failed to properly handle the funds which came into his care and keeping. Instances where he collected delinquent taxes, some in cash, and some by check, and no receipt was given to the taxpayer.

One of those instances was when the Oklahoma Tax Commission sent a sales tax warrant to the sheriff of Oklahoma county against the Black Hotel Pharmacy, Inc., and the same was received September 11, 1934. There was due upon this warrant $84.72, and $3.85 penalty; total $88.57. The defendant, on the following day, September 12, 1934, collected the following amount of this warrant in cash with an additional sheriff's fee of $1, total $89.57. He made no record in the sheriff's office of the receipt of this money. It was not entered on any book. He took

the original and duplicate sales tax warrant and left the duplicate stamped paid with the party who paid him the cash. This was first brought to light when the state attempted to collect the taxes the second time from the Black Hotel Pharmacy, Inc., about a year after the payment had been made to the defendant. The original tax receipt was never found, and the money was never accounted for in the sheriff's office. The first deposit made to the county treasurer after September 11, 1934, was on September 18, 1934. It does not list a deposit of $89.57, but the total deposit is $88.20, made up of $51 in currency, and three checks in the amounts of $6.38, $3.86, and $26.61; total $88.20. Each of these last three items had different numbers.

Another instance was when a tax warrant No. 6080, for $74.14, was received by the sheriff's office against Kanaly's Food Market on March 14, 1934. This warrant was paid by check by the company to the defendant. The defendant made no record of the receipt of this check; no entry was made in the cash book. No receipt was issued to the taxpayer. Defendant endorsed the check and listed it on the deposit slip. He did not list it as Kanaly's check nor did he list Kanaly's tax warrant on the deposit slip. When the voucher was made at the end of the month the Kanaly tax warrant No. 6080 was not listed on the voucher, and was not pulled and put with the voucher as it should have been. While this check went to the sheriff's depository account it did not show that the Kanaly taxes were paid. It will be seen how by this act the amount of money reported by the check could have been appropriated by the defendant to his own use and benefit, although the check of Kanaly's went into the sheriff's depository fund. Merely the keeping of that amount of cash by defendant would have shown the books

to have been in proper shape. The Kanaly taxes were never paid as shown by the books of the county treasurer, although he had issued his check for them and it had been deposited and collected. The same procedure was followed by defendant in a tax warrant No. 8368, held by the sheriff's office for the Certified Retail Grocer's Association, which was paid by check on January 21, 1935. Another instance were tax warrants of John Bailey, Jr., and Mrs. Edna Bailey, Nos. 1406, 1407, and 1408, for $86.64.

The evidence reveals other acts upon the part of the defendant, where he failed to issue receipts when money was paid him upon tax warrants which he held for collection. Other instances reveal that he issued receipts and the warrants which it was his duty to pull could not be located. The auditor from the office of the State Examiner and Inspector testified that three vouchers, one being No. 12355, issued to the county treasurer for taxes for March, 1932, in the sum of $2,371.57; also voucher No. 12945, dated June 30, 1932, for payment of taxes received by the sheriff for the month of June, and also voucher No. 12510, for the month of April, 1932, in the amount of $310, are still outstanding, and cannot be found. These vouchers should have been presented to the county treasurer's office by the defendant. The auditor further testified if the three missing vouchers had been presented for payment that the sheriff's depository account would have been overdrawn. It is contended by the state that the holding of those vouchers was a part of the system of defendant to cover up his embezzlement of funds, and that by these vouchers not showing up, sheriff's depository account would not show overdrawn, when in truth and in fact not enough money had been deposited therein to cover the receipts which he had written. If the account had been overdrawn at that time, it would have shown a shortage

in the account, and would have given an opportunity for an investigation which would have revealed the shortage at that time. The failure of these warrants to appear delayed the time for the shortage to be discovered.

The statute under which defendant was charged was: Section 2495, Okla. Stats. 1931, 21 Okla. St. Ann. § 341, which is as follows:

"Every public officer of the state or any county, city, town, or member or officer of the Legislature, and every deputy or clerk of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this state or any department of the government of this state or any bureau or fund created by law and in which this state or the people thereof, are directly or indirectly interested, who either:

"First: Appropriates to his own use, or to the use of any person not entitled thereto, without authority of law, any money or anything of value received by him as such officer, clerk, or deputy, or otherwise, on behalf of this state, or any subdivision of this state, or the people thereof, or in which they are interested; or,

"Second: Receives, directly or indirectly, any interest, profit or perquisites, arising from the use or loan of public funds in his hands or money to be raised through his agency for state, city, town, district or county purposes; or,

"Third: Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to any moneys so received by him, on behalf of the state, city, town, district or county, or the people thereof, or in which they are interested; or

"Fourth: Fraudulently alters, falsifies, cancels, destroys or obliterates any such account; or

"Fifth: Willfully omits or refuses to pay over to the state, city, town, district or county, or their officers or agents authorized by law to receive the same, any money

or interest, profit or perquisites arising therefrom, received by him under any duty imposed by law so as to pay over the same, shall upon conviction thereof, be deemed guilty of a felony and shall be punished by a fine of not to exceed $500, and by imprisonment in the penitentiary for a term of not less than one nor more than 20 years, and in addition thereto shall be disqualified to hold office in this state, and the court shall issue an order of such forfeiture, and should appeal be taken from the judgment of the court, the defendant may, in the discretion of the court, stand suspended from such office until such cause is finally determined."

It is contended by defendant that, "the evidence as a whole shows that this shortage is a bookkeeping one arising on account of errors, oversights, mistakes, omissions and carelessness, and not an embezzled one." A careful reading of the record, and taking into consideration that the questions of fact have been decided by the jury, and upheld by the trial court in overruling the motion for new trial, does not justify this court in coming to that conclusion.

The defendant had had three years and ten months' experience in the tax department of the county treasurer's office of Oklahoma county prior to his appointment as deputy sheriff. It was by reason of this experience and qualification that he was appointed to this position. The method of collecting the delinquent personal taxes was so simple, as above outlined, and it was so easy for him to have detected an error immediately upon its occurrence, that the jury had the right to conclude that it was not an error in bookkeeping, and was not due to mistakes, omissions, and carelessness. The failure of defendant on occasion after occasion to give receipts, when he received money or checks from taxpayers to pay their taxes; his failure to pull the original tax warrants, and return them to the office of the county treasurer, and his failure to give

a full receipt for the money received from the Cromwell Franklin Oil Company and the Capitol Drilling Company; his action with reference to the money paid him by the Black Hotel Pharmacy, Kanaly's Food Market, the Certified Retail Grocer's Association, and John Bailey, Jr., and Mrs. Edna Bailey, were all for the proper consideration of the jury as to the plan and scheme used by defendant to cover his shortage as shown by the report of the auditor from the office of the State Examiner and Inspector.

Upon cross-examination with reference to his failure to do these things in the proper manner, his reply was that he had no independent recollection of them. He identified his own handwriting in many instances, and acknowledged the receipt of the money in question. His only explanation was that he had placed it in the cigar box or the safe.

The evidence revealed that other officers at times assisted the defendant in the collection of taxes, and the making out of the deposit slips, when he was not present, but the evidence of these officers is that the proceeds were immediately turned to the defendant, so that he had the opportunity to examine the receipts and the cash, and see whether they balanced. The defendant's own testimony was that he never at any time found anything wrong, and that he never at any time made complaint to any one.

In the brief of defendant only one case is cited upon this proposition, and that is the case of Sentell v. State, 61 Okla. Cr. 229, 67 P. 2d 466, 469, which announces the rule.

"It is well-settled law in this state that if there is evidence to support the conviction this court will not weigh the sufficiency of the same to support the verdict. It is, however, equally well settled law in this state that this court will consider all the evidence to ascertain

whether a verdict is in fact founded upon sufficient evidence to warrant a conviction.

"If the evidence introduced by the state fails to incriminate the defendant, or as a matter of law is insufficient to show that the defendant is guilty of the offense charged, it is not only the right but the duty of the trial court to advise the jury to return a verdict of acquittal."

There is no question as to the correctness of the rule above announced, but the facts in the instant case do not justify its application here. The case of Lyons v. State, 68 Okla. Cr. 396, 100 P. 2d 287, is identical in many ways with the case at bar. In that case the money collected by the defendant was deposited in a cigar box, as was done in this case, and placed in a desk where others had an opportunity to have access thereto. In that case it was held that the evidence was sufficient to show that defendant appropriated the funds which came into his possession to his own use and benefit. State v. Duerksen, 8 Okla. Cr. 601, 129 P. 881, 52 L. R. A., N. S., 1013; Liddell v. State, 61 Okla. Cr. 306, 68 P. 2d 432.

It is next contended that the court erred in giving instruction No. 6, and in refusing to give defendant's requested instruction No. 1. Instruction No. 6 was as follows:

"You are instructed that if you find and believe from the evidence in this case, beyond a reasonable doubt, that the defendant, E. E. Abernathy, on or about the 14th day of February, 1935, was a duly appointed, qualified and acting deputy sheriff acting under Stanley Rogers, sheriff of Oklahoma county, Oklahoma, with authority to collect and receive money and things of value for and on behalf of Oklahoma county and the state of Oklahoma, and with the authority and the duty to deposit same with the county treasurer of Oklahoma county, Oklahoma, and while acting as such deputy sheriff he did collect and receive from time to time certain money and things of

value on behalf of and for and on account of Oklahoma county and the state of Oklahoma, under his official capacity and by virtue of his office of deputy sheriff, and thereafter did unlawfully, willfully, intentionally, fraudulently and feloniously embezzle and convert to his own use and benefit and not in the due and lawful execution of his trust as such deputy sheriff, and without the assent of Oklahoma county and the state of Oklahoma, and without authority of law, the sum of $1,984.76, or any part thereof, the property of Oklahoma county and the state of Oklahoma, and that defendant's appointment and employment as deputy sheriff was terminated on or about said day and he did then and there willfully omit and refuse to pay over to Oklahoma county and the state of Oklahoma, and their officers and agents the said sum of $1,-984.76, or any part thereof, as charged in the information in this case, then he would be guilty of the charge against him. However, if you do not so find, or entertain a reasonable doubt thereof, then it will be your duty to find the defendant not guilty and acquit him. If you find the defendant guilty, you will so state in your verdict and it will be your duty to fix and assess the punishment therefor within the limits heretofore set forth in these instructions."

Defendant's requested instruction No. 1 was as follows:

"You are instructed that if a shortage in the delinquent personal tax warrant collection account occurred during the term of office of the defendant, and if you find from the evidence that such shortage was due to loose bookkeeping, errors, and oversight, then such shortage would not be an embezzled shortage; but if you find that the defendant fraudulently appropriated the amount of such shortage, or any portion thereof, then he would be guilty of embezzlement; otherwise, he would not."

We do not see how any objection can be had to instruction No. 6. In very simple and concise language it presented the issue to the jury, giving them an opportunity

to pass upon the question of fact as to them seemed proper under the evidence in the case. Certainly there was no misstatement of the law in any way.

The requested instruction offered by defendant is confusing and misleading, and is not justified by the evidence offered in this case. It could have only tended to confuse the issue involved. While there may have been evidence before the jury that there was loose bookkeeping by defendant and errors and oversights, yet this would not justify an instruction that if they existed it would not be an "embezzled shortage", and that he should be discharged. This is not the law. In almost every case of embezzlement there exist loose bookkeeping, errors and oversights. Ryan v. State, 8 Okla. Cr. 623, 129 P. 685; Newby v. State, 17 Okla. Cr. 291, 188 P. 124.

Defendant, in his brief to support his contention, cites the following cases: Hays v. State, 22 Okla. Cr. 99, 210 P. 728; Blake v. State, 12 Okla. Cr. 549, 160 P. 30, L. R. A. 1917B, 1261; Smith v. State, 61 Okla. Cr. 427, 69 P. 2d 394; State v. West, 14 Okla. Cr. 405, 171 P. 1127; Murray v. State, 55 Okla. Cr. 241, 28 P. 2d 718. In the Hays Case the information was based upon a different statute, sec. 7437, Laws 1910, sec. 7761, O. S. 1931, 19 Okla. St. Ann. § 641, and not upon the statute here involved, which was section 2495, O. S. 1931, 21 Okla. St. Ann. § 341. The statute construed in the Hays Case was a special embezzlement statute, and its terms were not the same as the one here involved. In the opinion the court said [22 Okla. Cr. 99, 210 P. 731]:

"Under the provisions of sections 3213 and 3214 [Stats. 1910, 28 Okla. St. Ann. §§ 3, 37] the illegal retention and failure to pay over the public funds would amount to an appropriation of the fund, not in keeping with defendant's trust, amounting to embezzlement as

therein defined. The language used, 'When any such officer (court clerk) shall fail or refuse to account for or to pay over any money in his official capacity he shall be deemed guilty of embezzlement,' indicates that the willful failure or refusal alone to pay over or account for public funds as provided by law constitutes the offense. This statute was designed to prevent a county officer, on one pretext or another, from retaining for an indefinite period, for his own advantage, portions of the perquisites of his office, pending adjustments, audits, offsets, and claims in litigation."

Sections 3213 and 3214, Rev. L. 1910, 28 Okla. St. Ann. §§ 3, 37, are special embezzlement statutes, but are worded different from the statutes involved in the Hays Case. The Blake Case construed section 2243, Rev. L. 1910; Oklahoma Statutes 1931, sec. 2479, 21 Okla. St. Ann. § 531, which was a special embezzlement statute, but whose terms were different from the ones under which the information was filed in the instant case. In that case the court said [12 Okla. Cr. 549, 160 P. 31, L. R. A. 1917B, 1261]:

"The accused, after obtaining lawful possession of the funds, failed to account for or to pay the same over on proper or lawful demand," would be liable for the embezzlement thereof. The Smith Case is one somewhat similar to the case at bar. In that opinion it was said [61 Okla. Cr. 427, 69 P. 2d 396]:

"The contention of defendant that someone else could have misappropriated the funds is merely a conjecture. The evidence showed that he was the one who had charge of them, and he was the one who failed to account for them, according to the verdict of the jury.

"It is first contended by the defendant that he was prosecuted for embezzlement of public funds under section 7761, O. S. 1931 (19 Okla. St. Ann. § 61), and that under said section it was necessary for the state to show a personal appropriation of said funds by the defendant before he could be convicted under this statute.

"We think that under the decisions of this court it is necessary under this statute to show there was a personal conversion, but we think that the proof as revealed by the record shows a personal conversion by the defendant. State v. Harris et al., 47 Okla. Cr. 344, 288 P. 385; Griswold v. State, 23 Okla. Cr. 136, 212 P. 1018.

"The record shows the items with which the defendant was charged with embezzling were traced into his hands. Receipts were issued by the defendant in his own handwriting, charges were made on the cash book and on the appearance docket all in his own handwriting. Some of these items were for marriage licenses and other public money that came into his hands as deputy court clerk. The record shows that these funds were not deposited in the manner provided by law. That this duty was intrusted to him is not denied. In order to appropriate the public funds to one's private use it is not necessary for the state to show by direct evidence the actual securing of the funds and the spending of the same. Often this would be impossible. When the funds were shown to have come into the actual possession of the defendant and they were not deposited in the office of the county treasurer, or turned over to the county in the manner provided by law, the jury has a right to infer that they have been misappropriated under the statute above indicated. The cases draw a close distinction as to the duty devolving upon public officials and those devolving upon individuals and especially when they are acting under a special statute, adopted for the purpose of protecting public funds which have come into the possession of public officers."

There is nothing in this case to sustain the contention of defendant. The same is true in the West and Murray Cases. The Lyons and Smith Cases are very similar to the case at bar. Carter v. State, 6 Okla. Cr. 232, 118 P. 264; Casselman v. State, 58 Okla. Cr. 371, 54 P. 2d 678. We do not see how a reversal of this case could benefit the defendant or change the result. He has been ably defended.

158

Finding no error, it is ordered that the judgment of the district court of Oklahoma county be affirmed.

DOYLE, P. J., and JONES, J., concur.