**Vernon James SASSER, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A-12419.**

Criminal Court of Appeals of Oklahoma.

April 10, 1957.

Rehearing Denied April 17, 1957.

Person E. Woodall, T. R. Benedum, Norman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, Vernon James Sasser, defendant below, was charged by information in the District Court of Cleveland County, Oklahoma, with the crime of embezzlement, allegedly committed against the City of Norman, in the county and state aforesaid. The crime was charged to have been committed on May 31, 1955, and anterior to the filing of said information, from and after the 1st day of May, 1947. Specifically, the information alleges

that as building, plumbing, and electrical inspector for the City of Norman, Sasser received and collected certain fixed inspection fees belonging to said city and did embezzle and appropriate to his own use and benefit contrary to law the sum of $6,665.09 of said public moneys. The defendant was tried by a jury, convicted, his punishment fixed at a fine of $250 and three years confinement in the penitentiary on which judgment and sentence were entered. From that judgment and sentence, this appeal has been perfected.

 The facts appear, in substance, to be as follows. The defendant, from May, 1947, to May 31, 1955, was the duly appointed and acting building, plumbing, and electrical inspector of the City of Norman, Oklahoma. During all of said time he made inspections of newly constructed properties within the city limits and newly developed areas located outside the city limits, the latter ostensibly to be brought within the city limits later, most of which were brought in thereafter. The record discloses that the total inspection fees collected during said time was $8,104.59, of which sum $1,439.50 was paid to the City of Norman. Covering the period of time of the fiscal year 1954–55, the defendant paid after audit and demand to the City of Norman, $1,122.25 without protest or claim of any kind being asserted to any of said funds. It appears that the fees involved in the sum of $1,439.50 were all similar items to those involved in the shortage of $6,665.09. It further appears that during all of the eight years the defendant was employed by the city, he was paid a salary for his services as inspector, and that he received his authority to collect the fees levied only because of city regulations. The record further shows that for at least forty-four of the ninety-six months involved, although the defendant made collections covering said period of time, he made no remittance to the City Clerk for inspection fees collected either within or without the city limits. It further appears that for fifty-two months in which the defendant made remittals to

the City of Norman, he withheld sometimes more than one-half the said fees covering inspections for the said areas. It appears that when collections were made, the defendant was supposed to make out his report describing the properties inspected and evidencing, on the pink slips, his collections and remittals as made to the city, daily. This, it appears, he did not do, but that he made out reports for only so much of the fees, both inside and outside the city limits, as he wished to account for. The checks herein involved were remittances made by the Kunkel Plumbing Co. of Norman for inspections made in connection with properties they were building. The checks were made out to Sasser personally and cover a period of eight years. It does not appear that he made any remittances or reports as to money received from the Kunkel Plumbing Co. during this period of time. He cashed the Kunkel checks at various business establishments, such as Mack's Food Market, in a total in excess of sixty monthly checks. Others were cashed at Uhle's Food Market, Hale's Department Store, etc., and banks, other than the First National Bank of Norman, which was the official depository of the city as well as the defendant's own personal savings account depository. It was admitted by the defendant on cross-examination that he bought groceries with some of the money he received from cashing the checks. Only a very few of the checks cashed by him were cashed at the First National Bank. Some of the checks were cashed at the Security National Bank and the City National Bank, just across the street from his and the city's depository bank. His explanation for cashing said checks at grocery stores and other banks than the First National Bank was it was more convenient to cash the checks at those places. The defendant related that he kept no record of the checks cashed and the money spent for groceries, etc. .

During most of the time herein involved, Dr. Newton of the Oklahoma University Business School faculty was City Auditor

and Mr. Plut Holland was City Attorney. It appears that Dr. Newton at no time in making his audit checked the accounts of the plumbing firm, etc., for whom the defendant made inspections, but checked his receipts only as reflected in the defendant's daily reports. On the death of Dr. Newton, Mr. Dewey Barnes, of the same faculty, became City Auditor, and on the death of Mr. Holland, Mr. John Luttrell, Jr., became City Attorney. Mr. Barnes conducted an audit of the building, plumbing, and electrical inspector's fees due the city and discovered inspections had been made for the Kunkel Plumbing Co. He discovered that the city had not received fees from Kunkel's due it from inspections made both inside and outside the city limits. On July 29, 1955, demand was made for fees covering the fiscal year 1954–55 at which time the defendant paid, without protest, the sum of $1,122.25 as reflected by the audit to be due the City of Norman from the defendant. On completion of the audit, the balance of defalcations upon which no settlement has been made was discovered. Demand was made therefor and no response was made thereto. The said sums reflected by said audit to be due the city have not been paid.

The defense made herein, is to the effect that the defendant had been informed by both Dr. Newton and Mr. Holland, whose lips, we have observed before, have been sealed by death, that the moneys he received for inspections outside the city limits were fees he was entitled to keep for himself. His contention is that he was collecting and retaining fees from inspections both inside and outside the city in his savings account in the First National Bank pending an accounting from the city as to what was his and what was the city's. It appears from the record that the checks herein involved included sums for inspections of only a few dollars up to sums involving in excess of $300, such checks being for many more than one inspection. The record further discloses that when he cashed these checks, he kept no records of what he spent and what he deposited in his

bank account. He contended, however, that he deposited the balance not remitted to the city in his private savings account in the First National Bank for the purpose of paying therefrom to the city what belonged to it and retaining for himself what belonged to him. He contended that he did not know how much belonged to the city and how much belonged to him. He did testify, however, that he knew exactly how much the charges were for each inspection, and that he knew what houses were and what houses were not in the city limits, and that he knew the amount of the fee due for each inspection and what would be due the city, but he did not keep any records thereon. At one time in his testimony, he did admit that occasionally he made a record on a piece of paper or in a note book. He did not produce any such record. In his testimony he further admitted he at no time made the fact of his claim upon the city known to any other official than the two deceased officials heretofore named. He admitted he made no demand for an audit and asserted no claim as to an interest in the funds when demand was made for the payment of $1,122.25. That he did not make a claim to any of the funds to any other city official, he explained, was because he supposed everybody knew it and his transactions were open and not concealed. He admitted he did not keep the funds which, he contended, were due the city in a separate trust fund, but contended he deposited them in his own personal savings account. It does not appear that the fund in his name in the First National Bank was ever designated to any bank official to be a trust fund for the purpose he claims. Numerous checks were drawn on this account as reflected by the exhibit thereof, said checks ranging in amount from $25 to $800. Neither did he disclose to any city official that he had moneys deposited in any fund which he retained for the purpose of an accounting. Furthermore, it appears that in this personal savings account there were exempt Workmen's Compensation Award funds in the sum of $1,900. At no time during the trial of this

case did the defendant ever attempt to show by the checks offered in evidence or the enumerated listed inspections, their locations and the amounts, which belonged to him. Furthermore, his books did not reflect collections of any moneys from the Kunkel Plumbing Co. or that he kept any books as to what was due therefrom on his claim for himself or what was due the city. These are the facts, in substance, upon which the jury drew conclusions and based their verdict. It is evidence from which the jury might lawfully conclude, under the provisions of 21 O.S.1951 § 341, that the defendant was guilty as charged.

▇ Where there is competent evidence in the record from which the jury could reasonably conclude the defendant is guilty as charged, even though there is a sharp conflict in the evidence, such situations present questions of fact which are the sole and exclusive province of the jury to weigh and determine. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479, and numerous other cases to the same effect.

The defendant's first contention is that it was error to deny his motion for a continuance because of his physical incapacity. An examination of the record in that regard discloses that two medical doctors examined the defendant and a Dr. Margo testified that the defendant could, without impairing his health or endangering his life, testify from an ambulance cot. He further testified that he was in possession of his mental faculties. To the contrary, Dr. Berry testified that it was necessary for the defendant to take narcotics, that he was in pain, and could not answer questions as he should.

▇ This Court has held many times that a request for continuance usually presents a question within the trial court's discretion and that unless there has been a clear abuse of discretion, the trial court's refusal to grant a continuance will not be disturbed. Shetsky v. State, Okl.Cr., 290 P.2d 149; Morrison v. State, 35 Okl.Cr. 311, 250 P. 543. Under the foregoing authorities, we cannot say the trial judge abused his discretion in denying the motion for continuance.

▇ Finally, the defendant contends it was error for the trial court to refuse to give his requested instruction No. 1, to wit: "You are further instructed that before the defendant can be convicted of the offense charged it must be shown that the accused fraudulently converted the money of the City of Norman to his own use, or that he fraudulently secreted it with the intent to so convert, and unless you so find, you are instructed to find a verdict of not guilty." The requested instruction must be considered in light of the special statute involved, the pertinent part of which reads as follows:

"Every public officer of the State or any county, city, town, or member or officer of the Legislature, and every deputy or clerk of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this State or any department of the government of this State or any bureau or fund created by law and in which this State or the people thereof, are directly or indirectly interested, who either:

"First: Appropriates to his own use, or to the use of any person not entitled thereto, without authority of law, any money or anything of value received by him as such officer, clerk, or deputy, or otherwise, on behalf of this State, or any subdivision of this State, or the people thereof, or in which they are interested; or * * *

"Fifth: Wilfully omits or refuses to pay over to the State, city, town, district or county, or their officers or agents authorized by law to receive the same, any money * * * received by him under any duty imposed by law so to pay over the same, shall upon conviction thereof, be deemed guilty of a felony and shall be punished by a fine of not to exceed five hundred dollars, and by imprisonment in the penitentiary for a term of not

less than one nor more than twenty years, * * *." 21 O.S.1951 § 341.

It is apparent that the foregoing instruction was drawn in keeping with the theory of the defense that the collection and appropriation of the funds was not fraudulent and was done openly and without concealment. But, the statute under which this prosecution was brought does not specifically make fraud and concealment elements of the crime. The gist of this crime is the collection of moneys by a public officer, "and every other person," on account of the city and the appropriation thereof to the officer's or person's own use and his refusal to pay over the said funds in due course, which is a felony. That these funds were not paid over in due course is evident because some of them have been retained contrary to the foregoing statute for nearly eight years. The fact that a public officer never concealed the taking or converting of the money received, as was allegedly done in this case, with the intention to return the same when it could be determined what belonged to the city, does not make the act lawful or any less embezzlement under the statute. Lyon v. State, 68 Okl.Cr. 396, 100 P.2d 287, 290. In the body of this opinion, this Court said:

"Under the specific statute heretofore quoted under which defendant was prosecuted, the law infers that the property had been appropriated to the use and benefit of the defendant, under the facts in this case. Casselman v. State, 58 Okl.Cr. 371, 54 P.2d 678."

Under the foregoing authority, a demand for payment under the conditions herewith presented is not necessary to complete the crime of embezzlement. Under the circumstances, the law itself constitutes sufficient demand. In Abernathy v. State, 69 Okl.Cr. 142, 101 P.2d 634, we said:

"Section 2495, Okla.Stats.1931, 21 Okla.St.Ann. § 341, is a special embezzlement statute, directed specially against any public officer of the state or any county, city, town, or member or officer of the Legislature and every deputy and clerk of any such officer.

"Under the above statute, the inference that one has embezzled property by fraudulently converting it to his own use may be drawn from the fact that he has not paid the money in due course to the owner, or from the fact that he has not accounted for the money which he received. This is especially true where public officials have failed to turn over to the proper authorities public funds which they have collected by reason of their official position."

It thus becomes apparent that the defendant, under the provisions of 21 O.S. 1951 § 341, had not the right to retain the funds under the law, even though he retained them openly and notoriously. The fact that he applied some of them to his own use and benefit and did not pay the funds over to the city as they became due brings him within the provisions of the statute. Under these conditions, the requested instruction was clearly erroneous and the trial judge did not err in refusing to give the same.

The judgment and sentence is accordingly affirmed.

POWELL and NIX, JJ., concur.