Carol E. MARTON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–104.

Court of Criminal Appeals of Oklahoma.

April 3, 1991.

Lisbeth L. McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge:

Appellant Carol E. Marton was tried by jury and convicted of four (4) counts of Embezzlement by an Officer in violation of 21 O.S.1981, § 341, in the District Court of Payne County, Case No. CRF–86–265. The jury recommended punishment of fifteen (15) years imprisonment and a five hundred dollar ($500.00) fine on each count. The trial court sentenced accordingly, ordering the sentences to be served concurrently. It is from this judgment and sentence which Appellant appeals. We affirm.

An audit conducted by the Motor Vehicle Division of the Oklahoma Tax Commission on November 12, 1985, showed that Appellant's Stillwater Tag Agency owed the Tax Commission $75,234.38. Another audit conducted on November 25, 1985, revealed $147,000.00 was due to the Tax Commission. The final audit showed that Appellant had failed to pay the Tax Commission $171,664.54. (Tr. 86–92)

Appellant testified in her own defense that she was not properly instructed on the deposit procedures and that she felt the figures revealed in the audits were wrong. Further pertinent facts will be set forth as necessary.

In her first assignment of error, Appellant contends that she was denied equal protection of the law as a result of having been denied a transcript of the preliminary hearing at State expense prior to trial. Both the State and the Appellant correctly note that it is a denial of equal protection to refuse an indigent a free copy of the transcript of a preliminary hearing. *Roberts v. LaVallee*, 389 U.S. 40, 42, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); *McMillion v. State*, 742 P.2d 1158, 1160 (Okl.Cr.1987); *Wilson v. State*, 701 P.2d 1040, 1041 (Okl. Cr.1985). However, in the present case, Appellant failed to make the necessary showing of indigency prior to trial.

The record reflects that Appellant appeared on January 9, 1987, before Judge Headrick, and orally requested a copy of the preliminary hearing transcript at State expense. The preliminary hearing had been conducted on December 12, 1986. The record indicates that the same oral motion had been previously denied by Judge Belden at the conclusion of the preliminary hearing. In support of her motion, Appellant argued that she was currently unemployed and without funds to pay for the transcript. She explained that she had certain assets which were encumbered by either mortgages or liens which prevented her from liquidating any of the assets in order to pay for the transcript. Appellant did not accompany either of her oral requests with a written request or an affidavit of poverty.

In *Cook v. State*, 487 P.2d 1373, 1375–76 (Okl.Cr.1971), this Court stated that absent some specific showing of indigency by affidavit or testimony, this Court cannot speculate that the defendant was, in fact, without funds, even though it appears that his lawyer is court appointed. In *Jones v. State*, 488 P.2d 593, 594–595 (Okl.Cr.1971), we held that a defendant seeking a transcript of a preliminary hearing at public expense must timely file a written request for such, together with an affidavit of poverty. *See also Hall v. State*, 570 P.2d 955, 959 (Okl.Cr.1977); *Brinlee v. State*, 543

P.2d 744, 747 (Okl.Cr.1976); *Morgan v. Graham,* 497 P.2d 464 (Okl.Cr.1972).

In *Penny v. State ex rel. Edmiston,* 547 P.2d 983 (Okl.Cr.1976), addressing a request for a transcript at State expense in order to perfect an appeal of a conviction, we stated that "one's financial ability to pay for a transcript is a prerequisite determination for the granting of a transcript at public expense and must be made on a case by case basis." 547 P.2d at 984. We reviewed the decision of the lower court in light of whether the defendant had presented sufficient evidence to establish a reasonable basis to support his averment that he had not the means to pay for the transcript sought. *Id.*

We find this analysis applies as well to the denial of a preliminary hearing transcript at State expense. *See Bruner v. State ex rel. District Court, Oklahoma County,* 581 P.2d 1314, 1316 (Okl.Cr.1978). Here, Appellant failed to make a specific showing that she was indigent, offering only general references to her financial condition without any factual support. The record indicates that Appellant hired her own legal counsel and posted a ten thousand dollar bond ($10,000.00). She was given an opportunity to have an evidentiary hearing prior to formal arraignment to determine whether she was entitled to a free copy of the transcript, but refused[1]. From the information provided by Appellant, we cannot find a reasonable basis exists for her allegation that she was without funds to pay for the transcript prior to trial. Appellant directs this Court's attention to *McMillion v. State,* 742 P.2d 1158 (Okl.Cr. 1987), wherein we did reverse the conviction because the defendant was denied a copy of the preliminary hearing transcript at State expense. However, that case is distinguishable from the present case as defendant McMillion filed all of the requisite instruments necessary to qualify him as an indigent. Accordingly, this assignment of error is denied.

■ In her second assignment of error, Appellant alleges she was denied effective assistance of counsel by trial counsel's failure to request a jury instruction on the lesser included offense of diversion of State funds pursuant to 21 O.S.1981, § 1463.

Appellant was charged under 21 O.S. 1981, § 341, Embezzlement by an Officer. This section provides in pertinent part:

Every public officer of the state or any county, city, town, or member or officer of the Legislature, and every deputy or clerk of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this state or any department of the government of this state of any bureau or fund created by law and in which this state or the people thereof, are directly or indirectly interested, who either:

Fifth: Willfully omits or refuses to pay over to the state, city, town, district or county,.... any money or interest, profit or prerequisites arising therefrom, received by him under any duty imposed by law so to pay over the same, shall upon conviction thereof be deemed guilty of a felony and shall be punished by a fine not to exceed five hundred dollars ($500.00) and by imprisonment in the penitentiary for a term of not less than one (1) nor more than twenty (20) years, and in addition thereto shall be disqualified to hold office in this state. ...

While Section 1463 provides:

Any state officer, deputy or employee of such state officer, who shall divert any money appropriated by law for the purpose and object of such appropriation, shall be deemed guilty of a felony and upon conviction thereof shall be punished by imprisonment in the State Penitentiary for a period of not less than one (1) year nor more than ten (10) years.

No authority is provided by either Appellant or the State to show that this Court has previously held Section 1463 to be a lesser included offense of Section 341. However, both parties direct this Court's

---

1. The record does reflect that a judicial determination of indigency was made, however it was made for purposes of appeal and not entered until after the Appellant's conviction. (O.R. 81)

attention to *Williams v. State,* 447 P.2d 456 (Okl.Cr.1968).

In *Williams* the defendant, who had been the administrator of the Tillman County Memorial Hospital, was convicted of embezzlement; however, the opinion does not specify under which of the embezzlement statutes the defendant was charged. In his third proposition of error, the defendant alleged that the trial court should have instructed the jury under the lesser included offense of diversion of public funds under 21 O.S.1961, § 1463. This Court found that the defendant had waived consideration of the issue as he failed to object to the court's instructions and failed to offer any written requested instructions of his own. Reviewing the allegation for fundamental error only, this Court found the exclusion of the instruction not to be fundamental error. Therefore, *Williams* is not dispositive of the issue in the present case.

Embezzlement is defined by statute as the fraudulent appropriation of property by a person to whom it has been entrusted. 21 O.S.1981, § 1451. Oklahoma has five distinct statutes under which a person may be charged with the crime of embezzlement. The class of persons enumerated, the kind of property covered and the punishment provided for the particular unlawful taking must be gathered from the language of the statute itself.

Section 341 has been interpreted by this Court on few occasions. In *Lyon v. State,* 68 Okl.Cr. 396, 100 P.2d 287, 289 (Okl.Cr. 1940), we held that Section 341 is a special statute and under its terms one is not charged with a misappropriation of any particular item or fund, but may be charged with the misappropriation of any and all funds in violation of his trust as a public officer. Further, under this statute the law infers that property of which the officer does not account has been appropriated to his own use and benefit, relying on *State v. Duerksen,* 8 Okl.Cr. 601, 129 P. 881 (1913).

In *Abernathy v. State,* 69 Okl.Cr. 142, 101 P.2d 634, 640 (Okl.Cr.1940), citing to *Smith v. State,* 61 Okl.Cr. 427, 69 P.2d 394 (1937), we stated that in order to appropriate the public funds to one's private use it is not necessary to show by direct evidence the actual securing of the funds and the spending of the same. When the funds were shown to have come into the actual possession of the defendant and they were not turned over in the manner provided by law, the jury has a right to infer that they have been misappropriated. *See also Sasser v. State,* 309 P.2d 1090, 1095 (Okl.Cr. 1957).

In *Wiley v. State,* 349 P.2d 30, 36 (Okl. Cr.1960), we held that Section 341 applied to an assistant county attorney who appropriated monies to his own use which had been paid to him by certain defendants as fines and cost. It was determined that the monies misappropriated need not be public funds in order to constitute a violation of the statute. The monies need merely be accepted in the name of the State. We further stated that Section 341 is broad enough to cover anyone who assumes to receive any money or property for accounting of the State who does not in such assumed role deliver the same to the state but appropriates it to his own use. *See also State v. Harrison,* 777 P.2d 1343, 1345 (Okl.Cr.1989).

Section 1463 has not been analyzed by this Court to the same extent. The terms "divert" and "diversion" are defined in part as the unauthorized use of funds. *Black's Law Dictionary* 477 (6th ed. 1990). The diversion of State funds is a much broader offense than misappropriating monies accepted in the name of the State for one's own personal use. Although it appears that the elements of the two sections seem to coincide, they are in fact separate offenses which merely overlap. One who diverts State funds is not necessarily guilty of converting them to his own use. Giving the terms of Section 1463 their plain and ordinary meaning, Section 1463 is not a "narrower" offense of Section 341, but a separate offense, punishable separately. A violation of Section 1463 can only be committed by a "state officer, deputy or employee of such state officer". A Section 341 violation is not so restricted but can be

committed by "every other person receiving any money or other thing of value on behalf of or for account of" the State or a department of the State.

In the present case, the evidence showed that as a tag agent, Appellant was an independent contractor of the State to collect and report all motor vehicle taxes. (Tr. 68) Revenues collected are to be deposited daily to a local bank account specifically established for monies due to the Oklahoma Tax Commission, referred to as the "tax account". Twice a month all monies due the Tax Commission are to be forwarded. (Tr. 69) Advice of Deposit slips are to be prepared daily and mailed to the Tax Commission detailing the monies collected that day. (Tr. 70) Monies not owed to the State are deposited into the agent's fee account which is to be used for the everyday operation of the agency. (Tr. 71) Only those persons authorized by the Motor Vehicle Division of the Tax Commission are allowed to withdraw money from the tax account. (Tr. 76) The maximum yearly compensation for a tag agent is $30,000.00. If the profits for a given year are less than $30,000.00, the agent is limited to the amount collected. (Tr. 81).

Appellant assumed the office of tag agent in 1981. As early as June 1982, monies which should have been deposited into the tax account for forwarding on to the Tax Commission were deposited in the fee account. In fiscal year 1982 Appellant spent $11,103.67 more than she took in. Every year after that for the remainder of Appellant's tenure she similarly came up short: fiscal year 1983 she was $15,670.33 short; fiscal year 1984 she was $71,439.29 short and in fiscal year 1985 she was $173,-870.17 short. Appellant's records show that she was never able to draw the maximum compensation of $30,000.00, coming close only in 1985.

Her personal financial records revealed that in one week during February 1982 Appellant purchased a 1982 Buick Skylark and a 1982 GMC Van. Appellant was also listed as a co-signer for the purchase of automobiles for her two daughters, a 1983 Buick Regal, purchased in June 1983, and a 1985 Pontiac Fiero, purchased in August 1985. Her sources of income consisted of the tag agency, child support (of which she received $500.00 per month until March 1985, when it was reduced to $250.00 per month) and winnings from bingo. Into her personal account Appellant deposited $344,-913.62 in 1984; $59,790.45 in 1985; and $24,930.55 in 1986, until the time of her resignation as tag agent. (Tr. 302) Further, Appellant wrote numerous checks to herself from the tag agency's account, totaling $35,030.00, in 1984; $35,500.00 in 1985; $18,900.55 in 1986. She also received $57,000.00 from the sale of her home. In July 1983, Appellant took out the first of several loans from the First National Bank of Stillwater for the construction of a new home. By October 1984 she had obtained a third mortgage on the home. Most of the five bedroom home was furnished with new furniture.

In 1982 the tag agency made a profit of $8,322.75. As long as this amount was less than $30,000.00 Appellant could draw the money out for operating costs. In 1983 the profit was $16,354.67 and in 1984 the profit was $12,343.72. However, in 1984 Appellant withdrew $58,000.00 for her personal account and $23,887.92 for rental equipment; far exceeding the amount allowed by law. In 1985 the agency showed a profit of $28,779.32. Appellant withdrew $76,000.00.

Based upon this evidence, a reasonable jury could not find Appellant guilty of the general offense of diversion of State funds. The evidence showed that if any offense was committed, it was the misappropriation of public funds for Appellant's own use as an independent contractor with the Oklahoma Tax Commission. As a lesser included offense instruction is necessary only when the evidence will support such a theory, it is clear that it was not error to fail to request or omit an instruction on the diversion of State funds in the present case.

Appellant includes in this allegation of error the assertion that it was improper to

give Instruction No. 4.[2] As it is not clear from the brief exactly what Appellant's objection is to the instruction, we will treat it as another aspect of her claim of ineffectiveness of counsel.

The record shows that Instruction No. 4 was requested by the State and objected to by the Appellant as having a strong potential to mislead the jury in considering the defendant's intent or lack thereof to commit the alleged events. The objection was overruled. (Tr. 397) We fail to see how counsel's performance was deficient in this manner.

Reviewing Appellant's claims of ineffective assistance of counsel under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we do not find that Appellant was prejudiced by counsel's performance or that the performance was so deficient as to render the verdict unreliable. Therefore, this assignment of error is denied.

█ In her final assignment of error, Appellant contends that a remark by an employee of the State Auditor's Office was an improper introduction of evidence of other crimes in violation of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979).

The record reflects that Johnny Woods, an auditor with the State Auditor and Inspector's Office, testified that he examined certain documents pertaining to the operation of Appellant's tag agency. These documents included bank statements, ledgers, semi-monthly reports, profit and loss statements, etc. In comparing the semi-monthly reports to the deposits made to the Tax Commission, Mr. Woods discovered that Appellant did not make timely deposits of monies taken in by the tag agency. Mr. Woods remarked "According to the Oklahoma Statutes a tag agent is required to deposit anything in excess of $100.00 on a daily basis to the Tax Commission clearing account. This would be a violation of that statute." (Tr. 212) Upon defense coun-

sel's immediate objection a bench conference was called. The prosecutor informed the court that the witness' remark was not the answer she had expected. The trial court sustained the Appellant's objection and admonished the jury to disregard the witness' comment. (Tr. 211–214)

Upon this record it is clear that the remark by Mr. Woods was an inadvertent comment and not the intentional introduction by the State of evidence of other crimes. Further, Appellant was not prejudiced by the remark as any error was cured by the court's admonition. *Patterson v. State*, 735 P.2d 338, 341 (Okl.Cr.1987); *Kitchens v. State*, 513 P.2d 1300, 1304 (Okl. Cr.1973).

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

LANE, P.J., and BRETT, PARKS and JOHNSON, JJ., concur.

---

**2.** Instruction No. 4 provided:
  You are instructed that if you find and believe from the evidence that the accused intended to restore the property alleged to have been

embezzled, such fact is no ground of defense, or of mitigation of punishment, unless payment has been made prior to the filing of the charge (O.R. 51).