Hiawatha COOK, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–15802.

Court of Criminal Appeals of Oklahoma.

July 28, 1971.

James Clark, Ardmore, for plaintiff in error.

Larry Derryberry, Atty. Gen., Robert H. Mitchell, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Hiawatha Cook, hereinafter referred to as defendant, was charged with the offense for Murder in the District Court of Carter County, and was convicted for Manslaughter in the First Degree; his punishment was fixed at forty (40) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that on January 4, 1969, one Milton Sanders was shot to death at a club east of Ardmore. Wayne Warthen, an investigator for the District Attorney's office, testified about investigating the shooting; he also took photographs and received a pistol and cartridge cases. Deputy Kelty testified that he was the first officer to arrive, and observed Milton Sanders lying face-down in a pool of blood.

Roscoe Wilson, the operator of the club, testified that he had loaned Sanders money and received a pistol from him as security. Sanders came to his club the evening of January 3, and repaid the money. Sanders asked him to keep the pistol for him so he would not have to carry it around. He became sick and went home. He later received a call from Bob Scribner, the person he left in charge, stating that Sanders wanted his gun back. He told Scribner to give him the gun.

Bob Scribner testified that he gave Sanders his gun, and Sanders left. He later was sitting in the back room, where a dice game was in process, when he heard two shots and looked up, and he saw the de-

fendant with a gun. He saw Sanders running, and observed the defendant following him. He heard one more shot, and then saw Sanders fall to the floor. The defendant snapped the gun twice after it was out of bullets and Sanders was on the floor.

Willie Thompson testified that he was in the back room at the crap table. The defendant brushed into Sanders, and snatched some of Sanders' money that was laying on the table. Sanders asked the defendant to put his money back, and flipped his coat back, revealing a pistol in his pocket. The defendant grabbed the pistol from Sanders' pocket and pointed it at his forehead. Several people yelled at him to put the gun down, and he dropped it to his side. In a matter of seconds, he raised the gun up and started shooting. Sanders was backing up with his hands in the air. Everyone in the room started to run, and he heard five shots.

Richard Clark's testimony was substantially the same as that of Thompson. He testified that after the shooting, the defendant stated that, "I'm a cold blooded m.f. finger." and that, "There's the two s.b.'s I should have killed."

Willie Benson's testimony was substantially identical to the two previous witnesses', with the exception that he heard six shots. The defendant snapped the gun twice after it was empty, and stated, "Who has got some more damned shells?"

Ray Lamberts, a firearms specialist, testified that because of the damage to the bullet, he could not positively state it had been fired from the pistol. The cartridges that were submitted to him had been fired in the pistol.

The parties stipulated that if Doctor Warner were present, he would testify that he performed an autopsy on the body of Milton Sanders. Sanders' body had six bullet holes, and the cause of death was multiple gunshot wounds.

Richard Stoughborough testified for the defense that Sanders had previously accused him of taking money from him while they were gambling. He attempted to pull a gun, but was stopped.

The defendant testified that he was at the club at the dice table, and that he had two dollars in his hand when he brushed Sanders, who thought he had taken his money. Then Sanders pulled out his gun and started toward him. He managed to take the gun away from him, and Sanders started to reach into another pocket. He knew that Sanders carried a knife, and to protect himself he started shooting. He denied that Sanders was backing up, and that he was following him. He admitted prior convictions for Armed Robbery and Assault with a Dangerous Weapon.

■ The first proposition asserts that the trial court erred in refusing to provide the defendant a Transcript of the Preliminary Hearing at the State's expense. This Court has previously held that it is error to deny an indigent defendant a free Transcript of Preliminary Hearing as a violation of the Equal Protection Clause of the Federal Constitution. Waters v. State, Okl.Cr., 454 P.2d 325. See also Parrott v. State, Okl.Cr., 479 P.2d 619.

We are of the opinion that the cases above cited are distinguishable from the instant case. In the *Waters* case, the defendant filed all of the requisite instruments necessary to qualify him as an indigent. He filed an Affidavit to Obtain Transcript in Forma Pauperis, an Affidavit of Attorney, and an Application to Obtain Transcript in Forma Pauperis, the said instruments setting forth that the defendant was destitute, and without funds, and that he had no relatives or friends that were financially able or willing to assist him. In reversing the *Waters* case, we cited the case of People v. Montgomery, 18 N.Y.2d 993, 278 N.Y.S.2d 226, 224 N.E.2d 730, wherein the New York Court stated:

"* * * and therefore when defendant requests transcript and when request is accompanied by affidavit of indigency, State must honor request if it is made far enough in advance of trial. * * *"

In the instant case, the Record reveals that on February 5, 1969, the defendant filed the following unverified instrument:

IN THE DISTRICT COURT OF THE TWENTIETH JUDICIAL DISTRICT

OF THE STATE OF OKLAHOMA, CARTER COUNTY

STATE OF OKLAHOMA,     Plaintiff,   )

vs.                              )     No. CRF-69-1/

HIAWATHA COOK,      Defendant.  )

## APPLICATION

Comes now the defendant, Hiawatha Cook, and shows to the court that on January 10, 1969, a preliminary hearing was held in the County Court before the Honorable Earl A. Brown, wherein this defendant was bound over to District Court for trial; and whereas a transcript of the proceedings therein is vital to defendant's preparation of a defense,

WHEREFORE, defendant, Hiawatha Cook, hereby applies to this court for a transcript of the proceedings at said preliminary hearing, to be prepared at State expense.

_____
Attorney for Defendant

## ORDER

Whereas, on this 3rd day of February, 1969, an application having been filed by defendant for a transcript of the preliminary hearing held on January 10, 1969; and this Court finding that said application should be heard,

IT IS ORDERED that defendant's application for a transcript of the proceedings beheard on the _5th_ day of February, 1969, at _11:30_ o'clock ___A___ M.

_____
Judge of the District Court

FILED

IN DISTRICT COURT

FEB 5˙ 19..

AT............o'clock............M.

ANCEL GRAHAM, Court Clerk
CARTER COUNTY, OKLAHOMA

[A43061]

The Record further discloses that on the same day the defendant filed an application for bond, and some fourteen days later, filed a motion for reduction of bond. The Record does not reflect what testimony, if any, was offered at the hearing for preparation of Transcript at state expense to show that the defendant was indigent or without friends or relatives that were willing to assist him. We further note that the defendant's application for bond hearing was set by court for hearing at the same time as his application for Transcript at public expense. Absent some specific showing of indigency by affidavit or testimony, this Court cannot speculate that the defendant was, in fact, without funds, even though it would appear that his lawyer was court-appointed. We, therefore, find this proposition to be without merit.

■ The final proposition asserts that the punishment was excessive and appeared to be the result of passion, and/or prejudice. This assertion is based upon the theory that the testimony reflected that the deceased was a man of violent nature. From the foregoing statement of facts, we cannot conscientiously say that the sentence was excessive. We are of the opinion that the evidence was sufficient to warrant a verdict of guilty of the offense of murder. We find this proposition to be without merit.

■ In reviewing the Record, the Court finds that the trial court gave in the second stage of the proceedings an instruction as to "good time" credits. We have previously held that the giving of such instruction is in error. Williams v. State, Okl.Cr., 461 P.2d 997. We are of the opinion that in the interest of justice, the judgment and sentence should be modified to a term of thirty years, and as so modified is affirmed. Modified and affirmed.

BRETT and NIX, JJ., concur.